**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHRISTOPHER DUSTIN,<br><br>   Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>   Defendant. | Case No. ED CV 09-1782 JCG<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.

## **INTRODUCTION AND SUMMARY**

On September 28, 2009, plaintiff Christopher Dustin ("Plaintiff") filed a complaint against defendant Michael J. Astrue ("Defendant"), the Commissioner of the Social Security Administration, seeking review of a denial of supplemental security income benefits ("SSI"). [Docket No. 3.]

On March 30, 2010, Defendant filed his answer, along with a certified copy of the administrative record. [Docket Nos. 12, 13, 14.]

On April 14, 2010, this matter was transferred to the calendar of the undersigned Magistrate Judge. [Docket No. 15.] Both Plaintiff and Defendant subsequently consented to proceed for all purposes before the Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Docket Nos. 16, 18.]

1   Pursuant to an October 5, 2009 case management order, the parties submitted
2   a detailed, 31-page joint stipulation for decision on July 6, 2010. [Docket No. 22.]
3   In sum, having carefully studied, *inter alia*, the parties' joint stipulation and
4   the administrative record, the Court concludes that, as detailed below, the
5   Administrative Law Judge ("ALJ") failed to fully and fairly develop the record
6   under the circumstances presented here. As the Ninth Circuit teaches, the ALJ has a
7   special duty to ensure that the claimant's interests are considered, particularly where
8   the claimant may have cognitive deficits. The Court thus remands this matter to the
9   Commissioner in accordance with the principles and instructions enunciated in this
10  Memorandum Opinion and Order.

## II.

## PERTINENT FACTUAL AND PROCEDURAL BACKGROUND

13  Plaintiff, who was 33 years old on the date of his administrative hearing, has a
14  high school education. (*See* Administrative Record ("AR") at 19, 23, 81, 98.)
15  Plaintiff has no past relevant work. (*Id.* at 17.)
16  On July 19, 2006, Plaintiff filed for SSI, alleging that he has been disabled
17  since May 30, 2006 due to "brain bleed" and "brain damage." (*See* AR at 44, 49,
18  81-86.) Plaintiff's application was denied initially and upon reconsideration, after
19  which he filed a timely request for a hearing. (*Id.* at 42, 43, 44-47, 49-53, 54.)
20  On December 9, 2008, Plaintiff, represented by counsel, appeared and
21  testified at a hearing before an ALJ. (*See* AR at 19, 21-41.)
22  On March 19, 2009, the ALJ denied Plaintiff's request for benefits. (AR 12-
23  18.) Applying the well-known five-step sequential evaluation process, the ALJ
24  found, at step one, that Plaintiff has not engaged in substantial gainful activity since
25  his SSI application date. (*Id.* at 14.)
26  At step two, the ALJ found that Plaintiff suffers from severe impairments
27  consisting of "cerebrovascular accident . . . , organic mental disorder and substance
28  abuse addiction." (AR at 14 (emphasis omitted).)

1  At step three, the ALJ determined that the evidence does not demonstrate that Plaintiff's impairment or combination of impairments meets or medically equals the severity of any listing set forth in the Social Security regulations.[1] (AR at 14.)

The ALJ then assessed Plaintiff's residual functional capacity[2] ("RFC") and determined that he can perform "a full range of medium work." (AR at 14.)

The ALJ found, at step four, that Plaintiff has no past relevant work. (AR at 17.)

At step five, based on Plaintiff's RFC and the Medical-Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404, subpt. P, app. 2, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (AR at 17-18 (emphasis omitted).) Thus, the ALJ concluded that Plaintiff was not suffering from a disability as defined by the Act. (*Id.* at 12, 18.)

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. (AR at 1-3, 6.) The ALJ's decision stands as the final decision of the Commissioner.

## III.

## **STANDARD OF REVIEW**

This Court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001, *as*

---

[1] *See* 20 C.F.R. pt. 404, subpt. P, app. 1.

[2] Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

*amended* Dec. 21, 2001). If the court, however, determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.
## ISSUES PRESENTED

Five disputed issues are presented for decision here:

1. whether the ALJ properly evaluated the non-examining state agency physician's opinion, (Joint Stip. at 3-6, 8-9);

2. whether the ALJ properly evaluated Plaintiff's RFC, (*id.* at 9-11, 12-13);

3. whether the ALJ failed to fully and fairly develop the record, (*id.* at 13-15, 17-18);

4. whether the ALJ properly evaluated Plaintiff's credibility, (*id.* at 18-23,

4

1  26); and

2       5.    whether the ALJ erred in failing to obtain vocational expert testimony.
3  (*Id*. at 26-28, 29-30.)

4       Under the circumstances here, the Court finds the issue of the ALJ's failure to
5  fully and fairly develop the record to be dispositive of this matter, and does not reach
6  the remaining issues.

## V.
## DISCUSSION AND ANALYSIS

9       Plaintiff argues that the ALJ erred in rejecting the opinions of two
10 consultative examiners on the basis that the "evaluations were too close to plaintiff's
11 incident and therefore do not reflect his current condition. However, the ALJ can
12 only guess what the plaintiff's current condition is without obtaining further
13 examinations." (Joint Stip. at 14-15.) Plaintiff contends that "[c]onsequently, this
14 prevented the ALJ from rendering a fair and accurate assessment of the Plaintiff's
15 mental functional limitations." (*Id.* at 15.)

16     A.    The ALJ's Duty to Fully and Fairly Develop the Record

17      The ALJ has an affirmative "duty to fully and fairly develop the record and to
18 assure that the claimant's interests are considered . . . even when the claimant is
19 represented by counsel." *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003)
20 (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)) (ellipsis in original);
21 *see Tonapetyan*, 242 F.3d at 1150. "In cases of mental impairments," the ALJ's
22 duty to clarify and develop the record "is especially important." *DeLorme v.*
23 *Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991); *see also Tonapetyan,* 242 F.3d at 1150
24 ("The ALJ's duty to develop the record fully is . . . heightened where the claimant
25 may be mentally ill and thus unable to protect her own interests.").

26      If the evidence is ambiguous or inadequate to permit a proper evaluation of a
27 claimant's impairments, the ALJ has a duty to "conduct an appropriate inquiry[.]"
28 *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996); *accord Tonapetyan*, 242 F.3d

at 1150; *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) ("[t]he ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence [or] the ALJ's own finding that the record is inadequate"). The ALJ may discharge this duty in several ways, including: (1) subpoenaing the claimant's physicians; (2) submitting questions to the claimant's physicians; (3) continuing the hearing; or (4) keeping the record open after the hearing to allow supplementation of the record. *Tonapetyan*, 242 F.3d at 1150.

      B.      Evidence of Plaintiff's Limitations

On May 30, 2006, Plaintiff was treated by the emergency room at Henry Mayo Newhall Memorial Hospital ("Henry Mayo Hospital") after he was "found by roommates lying on the floor, very confused and combative." (AR at 140-41.) Treating physicians initially diagnosed Plaintiff with left cerebral basal gangliar hemorrhage, hypertension, and methamphetamine use. (*Id.* at 142.)

On June 19, 2006, a treating physician at Henry Mayo Hospital noted that Plaintiff has a history of hypertension and diabetes. (AR at 159.) The physician also explained that Plaintiff's May 30, 2006 admittance was due to "intracranial bleed" and diagnosed that Plaintiff had suffered from an intracranial hemorrhage. (*Id.* at 159-60.)

On November 15, 2006, examining psychologist Kim Goldman, Psy.D. ("Dr. Goldman") performed a complete psychological evaluation of Plaintiff. (AR at 501-05.) Dr. Goldman reported that Plaintiff was hospitalized from "May 30 through July 18 in a medical hospital and at a rehabilitation hospital Rancho Los Amigos from July 18 through August 12" of 2006. (*Id.* at 502.) Dr. Goldman indicated that Plaintiff "had a brain shunt put in at the age of 30." (*Id.*)

After conducting a mental status examination and administering a series of tests, including the Wechsler Adult Intelligence Scale – III, the Wechsler Memory Scale – III, the Trail Making Test Parts A and B, and the Bender-Gestalt Test – II, Dr. Goldman diagnosed Plaintiff with amphetamine dependence in early full

6

1  remission, cognitive disorder, not otherwise specified, and personality disorder, not
2  otherwise specified.  (AR at 502-04.)  Dr. Goldman noted that Plaintiff's
3  "performance IQ is relatively depressed indicating the likely presence of a cognitive
4  disorder."  (*Id.* at 504.)

5      Dr. Goldman found that Plaintiff would have "[m]ild difficulties of
6  concentration, persistence and the ability to work at a pace appropriate for his age"
7  and "[h]is ability to understand, carry out and remember detailed instructions and
8  complex tasks is markedly impaired due to auditory memory deficits[, h]is ability to
9  respond appropriately to coworker, supervisors and the public is moderately
10 impaired due to auditory memory deficits[, and h]is ability to respond appropriately
11 to usual work situations and deal with changes in a routine work setting is mildly to
12 moderately impaired due to auditory memory deficits."  (AR at 504-05.)

13     On November 28, 2006, examining neurologist and psychiatrist John S.
14 Woodard, M.D. ("Dr. Woodard") completed a neurologic evaluation of Plaintiff.
15 (AR at 524-26.)  Dr. Woodard stated that Plaintiff "has made a fairly good recovery
16 except for persistent cognitive impairment."  (*Id.* at 524.)

17     Dr. Woodard also noted that Plaintiff "is extremely forgetful to the extent that
18 he repeats questions and he has great difficulty in learning new material or recalling
19 simple instructions."  (AR at 524.)  Dr. Woodard conducted a mental status
20 examination and concluded that "[h]e is able to speak quite normally when
21 responding to a question but there is no spontaneous speech and there is a notable
22 lack of expression."  (*Id.* at 525.)  Dr. Woodard reported that "[t]here is some
23 persistent masking of facial expression as well as general immobility."  (*Id.*)

24     Dr. Woodard diagnosed Plaintiff with intracerebral hemorrhage with cognitive
25 impairment and determined that he "has marked cognitive impairment with general
26 inertia, attention deficit, disengagement and impaired capacity for learning new
27 information."  (AR at 526.)

28

### C. The ALJ's Assessment of Plaintiff's Limitations

In assessing the severity of Plaintiff's impairments and his RFC, the ALJ rejected Dr. Goldman's opinion because Plaintiff's "testimony that he is currently able to successfully pursue a course preparing him for auto smog certification and work, without concern, in the proximity of moving machinery when in auto shop indicates that his psychological condition has vastly improved since Dr. Goldman's examination several years ago." (AR at 15.)

With respect to Dr. Woodard, the ALJ similarly rejected his opinion stating, Plaintiff "testified at the hearing that he was attending classes in English, mathematics, as well as auto smog technician certification. Obviously [his] cognitive deficits have improved considerably." (AR at 16.)

The ALJ concluded that the examinations of Dr. Goldman and Dr. Woodard "were performed much too close to the incident and do not at all reflect [Plaintiff's] current condition." (AR at 16.) The ALJ based his conclusion on the March 13, 2007 opinions of "Kevin Gregg, M.D. [("Dr. Gregg")], and J. Hartman, M.D. [("Dr. Hartman")], State Agency consultants, [who] stated that [Plaintiff] did not allege any worsening of his condition[.]" (*Id.*)

Accordingly, the ALJ found that Plaintiff's "severe physical and mental impairments resulting from [his intracranial hemorrhage] in May 2006, never resulted in any impairments lasting for a 12 month period, and never for such a period deprived [Plaintiff] the [RFC] for medium work activity[.]" (AR at 16.)

### D. The ALJ Failed to Fully and Fairly Develop the Record

Having carefully reviewed the record and the parties' papers, the Court is persuaded that the ALJ failed to fully and fairly develop the record and his decision is not supported by substantial evidence. Three reasons guide this Court's determination.

First, the ALJ's rejection of both Dr. Goldman and Dr. Woodard's opinions based on Plaintiff's testimony regarding his activities of daily living is not supported

1  by substantial evidence. In rejecting the examining physicians' opinions, the ALJ
2  described Plaintiff's testimony that "he is currently able to successfully pursue a
3  course preparing him for auto smog certification and work, without concern, in the
4  proximity of moving machinery when in auto shop" and "was attending classes in
5  English, mathematics[.]" (AR at 15, 16.)
6        However, at the hearing, Plaintiff testified that he is in the "Disabled Students
7  Programs and Services," which permits him "double time to take a test." (AR at 27.)
8  Plaintiff further explained that during the past semester, he was taking math and
9  English, but he failed English. (*See id.* at 27-29.) He stated that "this time," he was
10 repeating the "English course that [he] failed," and taking math, but he "ended up
11 dropping the Math class" because he had difficulty handling the course load. (*Id.*)
12       Further, Plaintiff testified that his "automative/smog class" is "a class to, to
13 learn how to do smogs on cars" and is both a "classroom course" and a "lab course."
14 (AR at 30, 39.) Plaintiff elaborated that he was having difficulty in the class, so the
15 disabled students program office provided him with "a tape recorder" so that he can
16 "record the class" and "listen to the lecture three times[.]" (*Id.*) Contrary to the
17 ALJ's description, Plaintiff did not specify whether, during the lab portion of his
18 smog course, he is "in the proximity of moving machinery [without concern]." (*See*
19 *generally id.* at 21-41.)
20       Accordingly, the Court finds that the ALJ's paraphrasing of Plaintiff's daily
21 activities is not entirely accurate. *See Reddick*, 157 F.3d at 722-23 ("[T]he ALJ
22 developed his evidentiary basis by not fully accounting for the context of materials
23 or all parts of the testimony and reports. His paraphrasing of record material is not
24 entirely accurate regarding the content or tone of the record."); *see also Holohan v.*
25 *Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("[The treating physician's]
26 statements must be read in context of the overall diagnostic picture he draws. That a
27 person who suffers from severe panic attacks, anxiety, and depression makes some
28 improvement does not mean that the person's impairments no longer seriously affect

1  her ability to function in a workplace.").

2  Second, the ALJ failed to cite to any more recent examining or treating
3  opinion in support of his rejection of Drs. Woodard and Goldman's opinions.  While
4  Defendant maintains that the ALJ's assessment was "consistent with" the opinions
5  of D. J. Williams, M.D. ("Dr. Williams") and Dr. Gregg, *non-examining* and
6  *reviewing* physicians' opinions, standing alone, are insufficient to constitute
7  substantial evidence.  (Joint Stip. at 17; *see* AR at 506-19, 534); *Erickson v. Shalala*,
8  9 F.3d 813, 818 n. 7 (9th Cir. 1993) ("the non-examining physicians' conclusion,
9  *with nothing more*, does not constitute substantial evidence[]") (internal quotation
10 marks, brackets and citation omitted) (italics in original); *Gallant v. Heckler*, 753
11 F.2d 1450, 1454 (9th Cir. 1984) (when the non-treating, non-examining physician's
12 opinion conflicts with the conclusions of examining physicians, that conclusion does
13 not constitute substantial evidence).

14 Moreover, Defendant's assertion is not well taken given that the ALJ gave
15 Dr. Williams' opinion "less weight" and rejected his RFC assessment, and Dr. Gregg
16 did not provide any opinion as to Plaintiff's limitations.  (AR at 16, 517-19, 534.)
17 Dr. Gregg merely recommended affirming the denial of Plaintiff's request for
18 benefits at the reconsideration stage, where it was also noted that Plaintiff had not
19 alleged or provided evidence of any worsening of his conditions.  (*See id.* at 534.)

20 In short, it appears that the ALJ has, in effect, improperly substituted his own
21 interpretation of the evidence without setting forth sufficient authority or medical
22 evidence to support his interpretation.  *See Tackett v. Apfel*, 180 F.3d 1094, 1102-03
23 (9th Cir. 1999) (ALJ may not substitute his own interpretation of the medical
24 evidence for the opinion of medical professionals); *Banks v. Barnhart*, 434 F. Supp.
25 2d 800, 805 (C.D. Cal. 2006) ("An ALJ cannot arbitrarily substitute his own
26 judgment for competent medical opinion, and he must not succumb to the temptation
27 to play doctor and make his own independent medical findings.") (internal quotation
28 marks, alterations and citations omitted).

Third, the fact that Plaintiff "did not allege any worsening of his condition," (AR at 16), does not relieve the ALJ of his duty to develop the record. In light of the fact that the ALJ did not rely on the opinion of any other treating or examining physician in concluding Plaintiff is capable of medium work *and* he found Dr. Goldman and Dr. Woodard's opinions were inadequate or too outdated to shed light on Plaintiff's limitations, the ALJ should have developed the record. The ALJ did not seek an updated consultative examination regarding Plaintiff's impairments, nor did he keep the record open and request Plaintiff to submit more recent treatment records. (*See generally* AR at 21-41); *see also Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992, *as amended* Sept. 17, 1992) (*per curiam*) (Although it is plaintiff's burden to provide sufficient evidence of entitlement of benefits, it has "long [been] recognized that the ALJ is not a mere umpire at [an administrative hearing], but has an independent duty to fully develop the record[.]"). Accordingly, under the circumstances of this case, the Court concludes that the ALJ did not satisfy his independent duty to fully and fairly develop the record and the Court cannot find his error to be harmless.

## VI.

## **REMAND IS APPROPRIATE**

This Court has discretion to remand or reverse and award benefits. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989, *as amended* Oct. 19, 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000, *as amended* May 4, 2000), *cert. denied*, 531 U.S. 1038 (2000). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke*, 379 F.3d at 595-96; *Harman*, 211

11

1  F.3d at 1179-80.

      Here, remand is required because the ALJ failed to fully and fairly develop the record.

      Because the Court concludes that the ALJ failed to fully and fairly develop the record, it does not reach Plaintiff's remaining contentions. (*See* Joint Stip. at 3-6, 8-13, 18-23, 26-28, 29-30.) Credibility findings are reviewed in light of the record as a whole, which in the instant case should properly include updated medical records regarding Plaintiff's limitations. *See Struck v. Astrue*, 247 Fed.Appx. 84, 86-87 (9th Cir. 2007). Accordingly, on remand, the ALJ must reconsider Plaintiff's credibility and reassess Plaintiff's RFC. In addition, the ALJ shall obtain additional information and clarification regarding Plaintiff's functional limitations. The ALJ shall reassess the medical opinions in the record and provide sufficient reasons under the applicable legal standard for rejecting any portion of the medical opinions. Finally, the ALJ shall, at step five, with the assistance of a vocational expert, determine whether Plaintiff can perform work existing in significant numbers in the regional and national economies.

      Based on the foregoing, IT IS ORDERED THAT judgment shall be entered **REVERSING** the decision of the Commissioner denying benefits and **REMANDING** the matter for further administrative action consistent with this decision.

Dated: March 10, 2011                    _____

                                               Hon. Jay C. Gandhi
                                     United States Magistrate Judge